UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
SAMUEL TIGGS,                                                File No. 07-cv-07254(BSJ)(THK)

                              Plaintiff,

   -against-

THE CITY OF NEW YORK, DEPARTMENT OF
CORRECTION COMMISSIONER MARTIN F. HORN,
PRISON HEALTH SERVICES, INC., MICHAEL
CATALANO, C.E.O. OF PRISON HEALTH SERVICES, INC.,
DOHMH MEDICAL DIRECTOR TREVOR PARKS, DOHMH
PROGRAM DIRECTOR REBECCA PINNEY, DOHMH
DEPUTY COMMISSIONER JAMES CAPOZIELLO,
DOHMH DEPUTY MEDICAL DIRECTOR BENJAMIN
OKONTA, DR. FRANZ MEDARD, PRISON HEALTH
SERVICES, INC., PHYSICIANS' ASSISTANTS, PRISON
HEALTH SERVICES. INC., PHARMACISTS JOHN DOE
1-5, DEPARTMENT OF CORRECTION EMPLOYEES,
JOHN DOE 1-5,

                              Defendants.
------------------------------------------------------------------------X

## REPLY MEMORANDUM OF LAW

Of Counsel:
John H. Bone, Esq.

HEIDELL, PITTONI, MURPHY & BACH, LLP
ATTORNEYS AT LAW
99 PARK AVENUE
NEW YORK, NEW YORK 10016
(212) 286-8585

494244.1

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ..................................................................................1

REPLY..........................................................................................................................1

    I. PLAINTIFF DOES NOT CITE ANY CASE LAW DEMONSTRATING THAT AN INSECT BITE IS A SERIOUS INJURY ..................................................................2

    II. PLAINTIFF FAILED TO MEET THE SUBJECTIVE STANDARD..............................5

    III. MERE CONCLUSORY ASSERTIONS OF A CUSTOM BASED ON SECOND AND THIRD SOURCES CANNOT SATISFY "ACQUIESCENCE" ON BEHALF OF THE POLICY MAKING OFFICIALS AND THE MUNICIPALITY ..................................6

    IV. THIS COURT SHOULD DECINE TO EXERCISE SUPPLEMENTAL JURISDICTION ........................................................................................................7

CONCLUSION ............................................................................................................8

# TABLE OF AUTHORITIES

**Cases**

Brock v. White, 315 F.3d 158 (2d Cir. 2003) ................................................................. 3, 4, 5

Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998) ................................................ 6

Dwares v. City of New York, 985 F.2d 94, 100 (2d Cir. 1993) ....................................... 7

Farmer v. Brennan, 511 U.S. 825 (1970) ....................................................................... 6

Harrison v. Barkely, 219 F.3d 132 (2d Cir. 2000), and Brock v. White, 315 F.3d 158 (2d Cir. 2003) ............................................................................................................. 3, 5

Leacock v. New York City Health Hosp. Corp. 2005 WL 1027152 (S.D.N.Y.)(Maj. J. Gorenstein) ................................................................................................................. 3

Pitchell v. Callan, 13 F.3d 545, 549 (2d Cir. 1994) ....................................................... 8

Ravenell v. Green Haven Correctional Facility, 2007 WL 765716, 4 (S.D.N.Y. March 14, 2007) ..................................................................................................................... 3

Sorlucco v. New York City Police Dept., 971 F.2d 864, 870-71, (2d. Cir. 1992) .......... 7

**Statutes**

28 U.S.C. § 1367(a) ........................................................................................................ 8

28 U.S.C. § 1367(c)(3) ................................................................................................... 8

42 U.S.C. § 1983 .................................................................................................. 1, 5, 6, 7

42 U.S.C. §1988 ............................................................................................................. 1

FRCP 8 ........................................................................................................................... 1

FRCP 12(b)6 .................................................................................................................. 1

## PRELIMINARY STATEMENT

This Reply Memorandum is submitted in further support of defendants' motion to dismiss pursuant to FRCP 12(b)6 because plaintiff failed to assert a cause of action against the Moving Defendants under 42 U.S.C. §§ 1983 and 1988, the Fourth, Eighth, and Fourteenth Amendments, and the laws and the Constitution of New York. Plaintiff has failed to allege or demonstrate a sufficiently serious injury, failed to allege or demonstrate that defendants acted with deliberate indifference, failed to adequately identify and describe what actually occurred regarding his claim, and has otherwise failed to state a cause of action. Plaintiff's allegations that his civil rights were violated because he was denied proper medical treatment amount to, at most, a claim of medical malpractice.

## REPLY

In opposition to defendants' motion to dismiss, plaintiff attempts to demonstrate that he has satisfied the FRCP 8 pleading requirements because an insect bite qualifies as a serious injury, that the individual defendants demonstrated deliberate indifference to plaintiff's medical needs by refusing to examine his insect bite, that newspaper articles, internal reviews, investigations, lawsuits, notices of claim and inmate complaints demonstrate a policy of violating constitutional rights carried out by the municipal and policy making defendants, and that respondeat superior is appropriate to the extent that plaintiff claims violations of state law.

## I.    PLAINTIFF DOES NOT CITE ANY CASE LAW DEMONSTRATING THAT AN INSECT BITE IS A SERIOUS INJURY

Preliminarily, plaintiff has not opposed defendants' argument that by acknowledging that he was immediately hospitalized and treated for his infection, the alleged failure to evaluate the insect bite is the sole act or omission upon which plaintiff seeks relief. Accordingly the alleged failure to evaluate and treat plaintiff's insect bite remains the only act or omission upon which plaintiff seeks relief. As a matter of law, an insect bite is not a serious injury. (See Defendants' Memorandum of Law dated November 16, 2007).

As alleged, plaintiff was bitten by an insect on or about May 15, 2006, and reportedly sought an evaluation or treatment of the insect bite, which was denied on unknown and undated occasions (see Complaint dated August 14, 2007 "Compl." at ¶ 21) for approximately one week until he was hospitalized on May 22, 2006[1] (see Plaintiff's Memorandum of Law in Opposition dated November 30, 3007 "Opp." at Page 4) immediately after plaintiff suffered an infection, swelling and immobility (see Compl. at ¶22). Plaintiff does not allege that he complained of pain to any health care providers, merely that his insect bite was not examined and he subsequently suffered an infection which was "immediately" treated. (See Generally Compl.) In his opposition papers, plaintiff claims that the insect bite degenerated into an extremely painful condition at the time he was hospitalized. (See Opp. at page 7.)

In opposition, plaintiff failed to cite any case law that demonstrates that an insect bite is a serious injury. Plaintiff attempted to demonstrate that the insect bite was a serious injury because he experienced severe pain from the infection and underwent intrusive treatments to

---

[1] In plaintiff's opposition papers, he asserts that he was hospitalized on May 22, 2007, over a year after the alleged insect bite occurred. Upon information and belief, this is a typographical error.

493774.1

treat the infection he subsequently experienced.[2] Plaintiff relies on <u>Leacock v. New York City Health Hosp. Corp.</u> 2005 WL 1027152 (S.D.N.Y.)(Maj. J. Gorenstein), <u>Harrison v. Barkely</u>, 219 F.3d 132 (2d Cir. 2000), and <u>Brock v. White</u>, 315 F.3d 158 (2d Cir. 2003) to demonstrate that plaintiff in this matter experienced a serious injury. The cases plaintiff relied on are distinguishable based upon the facts alleged.

In <u>Leacock</u>, *supra*, plaintiff *pro se* suffered from a broken finger. She alleged that her finger was swollen and painful for three months. <u>See</u> <u>Leacock</u> at *5. Further, she alleged that she was not provided with any medical attention and was only brought to the hospital due to the intervention of the Prisoner's Rights Project. <u>Id</u>. When she was brought to the hospital, her finger was immediately operated on. <u>Id</u>. Here, plaintiff suffered from an insect bite, not a broken bone. Furthermore, plaintiff here does not claim that he was in pain or that he made complaints of pain prior to his hospitalization (<u>see generally</u> Compl.) as the plaintiff in <u>Leacock</u> did. Lastly, after plaintiff here experienced swelling, he was immediately hospitalized (<u>see</u> Compl. at ¶22), unlike plaintiff in <u>Leacock</u>, who suffered for three months. It should also be noted that the decision in <u>Leacock</u> has been questioned by Judge Pauley in <u>Ravenell v. Green Haven Correctional Facility</u>, 2007 WL 765716, 4 (S.D.N.Y. March 14, 2007)(noting that "most courts have held that a broken finger does not constitute a serious medical need.")

In <u>Harrison</u>, *supra*, a prison inmate was experiencing pain from a cavity, for which he made three written requests to be seen by the dental clinic. The second and third requests noted that he was in pain. He was first examined by a dentist ten weeks after his first request. The dentist refused to fill the cavity because a second tooth was un-restorable and needed to be removed as a priority before the cavity could be filled. Plaintiff in <u>Harrison</u> refused

---

[2] Defendants do not concede that plaintiff's infection occurred due to the alleged failure to treat his insect bite. However, for the purposes of this motion, defendants will assume all the facts alleged in favor of plaintiff.

493774.1

3

to have his tooth extracted and filed a grievance requesting that one tooth be filled and the other remain un-extracted. The grievance was denied and plaintiff there appealed twice, requesting that his tooth be filled without extracting the other tooth. Ultimately plaintiff there sought judicial intervention and the treatment he sought was ordered by a State Court Judge – his cavity was filled approximately one year after he first requested the treatment. Plaintiff alleged in his District Court action that he had been subjected to unbearable pain for approximately ten months. The Court determined that a cavity is a degenerative condition, and although treatment may usually be delayed or scheduled for a convenient time, it must eventually be treated. Here, as previously noted, plaintiff has not demonstrated that an insect bite is a degenerative condition or cited any case law to support this proposition, plaintiff has merely alleged that he suffered an infection approximately one week after being bitten. Further, he does not allege that he made any complaints of pain, and he was concedes that he was immediately treated for the infection, swelling and immobility that he experienced one week after being bitten. Lastly, as alleged, plaintiff was treated approximately one week after he first noted his insect bite, which is consistent with a timely response to an infection.

In Brock, *supra*, plaintiff suffered a serious knife wound to his right cheek. (See Brock 315 F.3d at 161.) He had a history of keloid formation noted in his medical records and was advised by a dermatologist to seek a steroid injection if he began to keloid. Id. Plaintiff there alleged that he began to keloid and complained of pain multiple times, but his complaints of pain were first documented approximately eight months after the knife wound. Id. A nurse and a doctor referred him to a dermatologist, but the supervising physician denied the referral because a keloid is "cosmetic." Id. Contrary to the instant case where plaintiff did not allege that he was in pain prior to being hospitalized, the plaintiff in Brock allegedly experienced pain for eight

493774.1

months before being treated. Furthermore, plaintiff here was immediately hospitalized after he experienced the swelling, immobility and infection, whereas plaintiff in <u>Brock</u> was denied medical treatment even after the records demonstrate that he reported that he was in pain.

The Second Circuit noted that a "decision to leave a condition untreated will be constitutional or not depending on the facts of the particular case." <u>Harrison</u>, 219 F.3d at 136-137. The cases that plaintiff has cited do not speak to the factual issues here. Here, plaintiff made no complaints of pain, he sought an evaluation for an insect bite, not a broken bone, a painful keloid scar, or painful cavity, Mr. TIGGS was immediately treated for his infection, swelling, and immobility, and lastly, the time period in which he was allegedly denied treatment was brief. Plaintiff has not alleged that an insect bite in and of itself is important and worthy of comment or treatment, that the insect bite significantly affected his daily activities, or that the insect bite was causing chronic or substantial pain which the Second Circuit held were factors determinative of whether the alleged injury satisfies the objective standard. <u>Chance v. Armstrong</u>, 143 F.3d 698, 702 (2d Cir. 1998). Clearly, an insect bite does not meet the objective standard to qualify as a serious injury sufficient to support a §1983 claim.

## II.   **PLAINTIFF FAILED TO MEET THE SUBJECTIVE STANDARD**

Plaintiff has alleged that defendants ignored an insect bite. Plaintiff has not satisfied the subjective requirements of <u>Farmer v. Brennan</u>, 511 U.S. 825 (1970). The Supreme Court held that in order to meet the subjective standard, a plaintiff must prove that defendants had actual knowledge of a risk, but also determined that evidence that the risk was obvious or otherwise must have been known will meet the subjective standard. <u>Farmer</u>, 511 U.S. at 842. Here, plaintiff has not alleged that defendants had actual knowledge of the risk of an insect bite, or otherwise demonstrated that the risk was obvious or should have been known to defendants.

493774.1

Further, there are no allegations that treatment would have been useful before the insect bite became infected.³

### III. MERE CONCLUSORY ASSERTIONS OF A CUSTOM BASED ON SECOND AND THIRD SOURCES CANNOT SATISFY "ACQUIESCENCE" ON BEHALF OF THE POLICY MAKING OFFICIALS AND THE MUNICIPALITY

Plaintiff alleged that the policy making officials and the municipality acquiesced to a custom to deprive prisoners of their Civil Rights because these defendants were aware of "newspaper articles, internal reviews, investigations, lawsuits, notices of claim and inmate complaints" and failed to take corrective action in violation of prisoner's Constitutional Rights.

> Plaintiff must allege that the discriminatory practices of city officials are persistent and widespread, they could be so permanent and well settled as to constitute a custom or usage with the force of law, and thereby generate municipal liability. [] However, before the actions of subordinate city employees can give rise to § 1983 liability, their [] practice must be so manifest as to imply the constructive acquiescence of senior policy-making officials. Sorlucco v. New York City Police Dept., 971 F.2d 864, 870-71, (2d. Cir. 1992)(internal citations and quotations omitted).

"[T]here must be proof of such a custom or policy in order to permit recovery on claims against individual municipal employees in their official capacities, since such claims are tantamount to claims against the municipality itself. Dwares v. City of New York, 985 F.2d 94, 100 (2d Cir. 1993). "The mere assertion, however, that a municipality has such a custom or policy is insufficient in the absence of allegations of fact tending to support, at least circumstantially, such an inference." Id (internal citations omitted). "Similarly, the simple recitation that there was a failure to train municipal employees does not suffice to allege that a municipal custom or policy caused the plaintiff's injury." Id (internal citations omitted).

---

³ Although not at issue for a motion to dismiss on the pleadings, defendants question the foundation of plaintiff's allegations.

493774.1

6

Plaintiff has merely asserted vague and conclusory allegations that defendants acquiesced through "newspaper articles, internal reviews, investigations, lawsuits, notices of claim and inmate complaints." Plaintiff has not provided any specifics of the documents such as dates or subject matter. The pleadings are devoid of any proof that a custom existed at Riker's Island to deprive inmates of medical attention and that the defendants acquiesced to this custom. Accordingly, plaintiff has merely asserted that a custom to deprive inmates of medical treatment existed, without any basis. This is insufficient as a matter of law to support a §1983 claim against a municipality or policy making officials.

### IV.   THIS COURT SHOULD DECINE TO EXERCISE SUPPLEMENTAL JURISDICTION

This Court, under 28 U.S.C. § 1367(c)(3), should decline to exercise jurisdiction over plaintiff's remaining state law claims. See Pitchell v. Callan, 13 F.3d 545, 549 (2d Cir. 1994) (noting lower court was correct in stating that "it is axiomatic that a court should decline to exercise jurisdiction over state-law claims when it dismisses federal claims). Under 28 U.S.C. § 1367(a), in any action in which a federal district court has original jurisdiction, "the district court shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." Under 28 U.S.C. § 1367(c)(3), however, a district court may decline to exercise supplemental jurisdiction over a claim or claims if "the district court has dismissed all claims over which the district court has original jurisdiction." Therefore, should this Court determine that it does not have federal question jurisdiction over the Moving Defendants, plaintiff's state law claims against the Moving Defendants should be dismissed for lack of pendent jurisdiction.

493774.1

7

## CONCLUSION

For the foregoing reasons, the Moving Defendants respectfully request that this Court dismiss plaintiff's complaint against THE CITY OF NEW YORK, FRANZ MEDARD, M.D. s/h/a "DR. FRANZ MEDARD," MARTIN HORN, TREVOR PARKS, M.D. s/h/s "DOHMH MEDICAL DIRECTOR TREVOR PARKS," JAMES CAPOZIELLO s/h/a "DOHMH DEPUTY COMMISSIONER JAMES CAPOZIELLO," MICHAEL CATALANO s/h/a "MICHAEL CATALANO, C.E.O. OF PRISON HEALTH SERVICES, INC.," BENJAMIN OKONTA, M.D. s/h/a "DOHMH DEPUTY MEDICAL DIRECTOR BENJAMIN OKONTA" and REBECCA PINNEY s/h/a "DOHMH PROGRAM DIRECTOR REBECCA PINNEY," and grant any further relief that this court may deem just and proper.

Dated: New York, New York
       December 7, 2007

493774.1

Respectfully Submitted,

By: _____
JOHN H. BONE (JB8342)
Trial Counsel for Defendants
THE CITY OF NEW YORK, FRANZ
MEDARD, M.D. s/h/a "DR. FRANZ
MEDARD," MARTIN HORN, TREVOR
PARKS, M.D. s/h/s "DOHMH MEDICAL
DIRECTOR TREVOR PARKS," JAMES
CAPOZIELLO s/h/a "DOHMH DEPUTY
COMMISSIONER JAMES
CAPOZIELLO," MICHAEL CATALANO
s/h/a "MICHAEL CATALANO, C.E.O. OF
PRISON HEALTH SERVICES, INC.,"
BENJAMIN OKONTA, M.D. s/h/a
"DOHMH DEPUTY MEDICAL
DIRECTOR BENJAMIN OKONTA" and
REBECCA PINNEY s/h/a "DOHMH
PROGRAM DIRECTOR REBECCA
PINNEY,"
Office & P.O. Address
99 Park Avenue
New York, NY 10016
Tel: (212) 286-8585
Fax: (212) 490-8966

To:   Stoll, Glickman & Bellina, LLP
      71 Nevins Street
      Brooklyn, NY 11217
      Attn: Cynthia Conti-Cook

493774.1

9